ilLease and Suspension” agreement; breach; withdrawal ■of Taylor Grazing Act permits. — On June 11,1976 the court entered the following order:
Before Davis, 'Judge, Presiding,' Nichols and KuNzig, ■Judges. • •
*709 “This contracts and' Taylor Grazing Act compensation case; comes before the court on defendant’s motion for summary' judgment and plaintiffs’ motion for oral argument.
“Plaintiffs, owners of New Mexico land rights, seek: (1) damages in lieu of specific performance of certain ‘lease and suspension’ agreements, or for defendant’s alleged breach of the agreements, and (2) additional compensation under 48 TJ.S.C. § 315q (1970) (granting compensation for Govern-' ment withdrawal of Taylor Grazing Act permits). Because plaintiffs cannot recover under the ‘lease and suspension’ agreements or under the Taylor Grazing Act, we hold for defendant. ;
“Plaintiffs’ lands lie within the White Sands Missile Range in New Mexico. In World War.II, part of the land (includ- • ing the site of the first atomic bomb test), was used by defendant for a bombing and gunnery range. By 1946, defendant, began to convert the area into a guided missile test range. As; part of this development in 1949-50 defendant leased part of plaintiffs’ interests (private ownership and state land leases) in certain lands and suspended plaintiffs’ federal grazing permits in what has been called ‘lease and suspension’ agreements. The agreements called for a ‘year to year’ Govern-' ment tenancy not to continue teyond June 30, 1970. Section 10 of the agreements required restoration of plaintiffs’ lands' to their original condition upon termination of the agree-' ments. However, defendant could make a cash payment in; lieu of restoration.
“By 1970, defendant discovered it had a continued need for' plaintiffs’ lands. Instead of renegotiating the agreements, the Government filed, declarations of taking, of plaintiffs’ private' ownership and state lease-hold interests in the United States District Court for the District of New Mexico. Rather than attempting to condemn the land outright, defendant appro-, priated the lands ‘for a term of years beginning July 1,1970,- and ending June 30,1980.’ In the. New Mexico proceedings,-, plaintiffs attempted to halt the condem/nation based on. an alleged breach by- defendant of the ‘lease and suspension’ agreements.,-In a, memorandum opinion, the district court'! *710 judge granted defendant’s motion to strike plaintiffs’ defense of equitable estoppel:
Any claims against the United States for breaches of the lease and suspension agreement^], if any, cannot be raised in this [condemnation] proceeding.
'“Haring failed to block the condemnation action based on the Government’s alleged breach of the dease and suspension’ agreements and on defendant’s failure to pay for elimination of grazing privileges, plaintiffs brought the instant action in an attempt to recover damages. Specifically, plaintiffs say they are entitled to compensation because defendant tailed under section 10 to return the lands to them in their original condition upon thevJune 30, 1970, expiration of the “lease and suspension’ agreements. Plaintiffs would have us find either that the Government’s conduct breached section 10 of the agreements, or that plaintiffs are entitled to damages in lieu of specific performance of section 10. Plaintiffs also argue that they are entitled to compensation under 43 U.S.C. § 315q, due to defendant’s cancellation of Grazing Act privileges.
“Defendant now enters a motion for summary judgment contending that plaintiffs cannot recover either under the ‘lease and suspension’ agreements or for any elimination of Grazing Act privileges.[1] Plaintiffs counter that there are factual issues which must be resolved before the court can settle the contract and Grazing Act issues. Plaintiffs also submit a motion for oral argument.
“Upon consideration of the parties’ pleadings, motions, briefs, and exhibits, we grant defendant’s motion for summary judgment and deny plaintiffs’ motion for oral argument.
(1) The Contract Claims:
“The crux of plaintiffs’ ‘lease and suspension’ agreement •claims is that defendant was inaltenably obligated under section 10 to restore plaintiffs to their lands upon termination •of the agreements. Defendant did not restore plaintiffs, but *711 instead condemned additional property rights. Plaintiffs now seek damages either for breach of section 10 or in lieu of specific performance of the same section.
“It is quite apparent that defendant’s failure to return plaintiffs’ property constitutes a technical breach of section 10 of the ‘lease and suspension’ agreements. However, there is no appropriate remedy for such a technical breach because plaintiffs have suffered no damages. ¿See, e.g., Micrecord Corp. v. United States, 176 Ct. Cl. 46, 361 F. 2d 1000 (1966). At the instant it was obligated to restore plaintiffs, defendant properly condemned an additional ten-year interest in plaintiffs’ lands. We cannot say that plaintiffs have been harmed by the Government’s failure to restore plaintiffs for the few seconds it would take to satisfy the ‘lease and suspension’ agreement provisions. To hold otherwise would compel defendant to make a useless gesture.[2]
“In short, while defendant is perhaps guilty of a technical breach of the ‘lease and suspension’ agreements, plaintiffs have suffered no compensable loss from this breach. Therefore, plaintiffs’ contract claims cannot stand.
(2) Taylor Grazing Act Claims:
“Plaintiffs also claim they are entitled to additional compensation for defendant’s cancellation of Taylor Act grazing privileges. On cancellation, 43 U.S.C. § 315q (originally enacted in 1942) authorizes payments ‘as the head of the department * * * using the lands shall determine to be fair and reasonable for the losses suffered.’ Plaintiffs seek additional compensation under this provision.
“Entitlement to compensation under section 315q is a matter within the discretion of the Secretary of the Army. In such a situation the function of the court is to review the Secretary’s determination. The administrative decision is entitled to finality unless plaintiff can demonstrate that the Army’s conduct is ‘so clearly wrong as to be arbitrary.’ *712 Drucker v. United States, 204 Ct. Cl. 514, 518, 498 F. 2d 1350, 1352 (1974).
“On March 30, 1973, the Department of the Army denied plaintiffs’ claims for additional compensation under section 315q. The Army based its denial on the ground that a portion óf the ‘lease and suspension’ agreement payments was intended to serve as full compensation for cancellation of plaintiffs’ grazing permits. Plaintiffs advance no cogent reasons which would compel us to reverse the Army’s decision. From all that appears in the record, we cannot say that plaintiffs’ section 315q compensation (included in the ‘lease and. suspension’ agreements) was inadequate .or that plaintiffs-were in any way led to believe that they would receive additional sums for cancellation of the permits. It thus appears-that the Army properly denied plaintiffs’ claims for additional section 315q compensation.
In summary, plaintiffs cannot recover damages in lieu of specific performance or for a breach of the ‘lease and suspension’ agreements. Plaintiffs have been unable to demonstrate-that they have been injured by defendant’s breach of its contract to restore plaintiffs to their lands. Moreover, plaintiffs cannot recover on their Taylor Grazing Act claims because they have failed to demonstrate that the Army’s decision to deny 43 U.S.C. § 315q relief was an abuse of discretion.
. “Accordingly, for the reasons stated above, it is hereby ordered that defendant’s motion for summary judgment is-granted, plaintiffs’ motion for oral argument is denied, and the petition is dismissed.”
On December 13, 1976 plaintiffs’ petition for a writ of certiorari was denied.

 Defendant also argues that plaintiffs’ claims are barred under the doctrine •of res judicata. Since we hold that plaintiffs cannot recover either under the agreements or the Taylor Act, we need not reach this question.

 If plaintiffs’ concern is defendant’s eventual return of the lands In good condition, such anxiety can be handled in the condemnation proceedings. The New Mexico district eourt currently has under advisement the issue of adequate compensation for the taking, and the Court of Claims, therefore, has nothing more to contribute at this stage of the proceedings.