The CONSERVATIVE CAUCUS, INC.

v.

The UNITED STATES.

No. 120–79 C.

United States Court of Claims.

June 3, 1981.

Marion Edwyn Harrison, Washington, D. C., attorney of record, for plaintiff. Barnett, Alagia & Carey, Washington, D. C., of counsel.

Robert E. Richardson, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant. Grayson M. Poats, Asst. Gen. Counsel, of counsel.

Before COWEN, Senior Judge, and KASHIWA and BENNETT, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

COWEN, Senior Judge:

The plaintiff in this case is a nonprofit, educational organization which has been granted a permit by the United States Postal Service (USPS) to mail at the special bulk third-class rate. This is a subsidized rate which is available only to certain non-profit organizations. During the time plaintiff's application for the permit was pending, a period of nearly 1 year, plaintiff made several mass mailings; it deposited the letters at post offices other than the one at which it had filed its application, and paid either first-class postage rates or the regular bulk rates available to the general public. This suit is for a refund of the difference between the rates plaintiff paid for these mailings and the rates which would have been due under the special bulk third-class rates.

When the claim was presented to USPS, it was denied on the grounds that plaintiff did not overpay the applicable postage rates for these mailings, because it did not comply with the regulations which would have entitled plaintiff to a retroactive application of the special rate. Since the applicable statutes and regulations granted USPS broad discretion concerning postal refunds, the agency decision is entitled to finality, because it was not clearly wrong nor contrary to law. Moreover, we find that there was a rational basis for the agency's interpretation of validly promulgated regulations and that the decision should be sustained on that ground. Accordingly, we grant defendant's motion for summary judgment.

### I.

The material facts in this case are not in controversy.

On March 23, 1977, plaintiff applied for a permit to make bulk mailings at a special bulk third-class rate. The application stated that plaintiff was a nonprofit organization whose primary purpose was educational; it was submitted, along with a copy of plaintiff's constitution and bylaws, to the post office in Falls Church, Virginia. On May 2, 1977, the manager of the USPS Sectional Mail Center for Northern Virginia denied the permit on the grounds that the evidence submitted did not establish that education was plaintiff's primary purpose. Plaintiff appealed this decision to the National Rates and Classification Department, but the denial was upheld in a letter signed by the Acting General Manager of the Domestic Mail Division on July 27, 1977.

Four days later, plaintiff submitted additional information. On January 19, 1978, 6 months later, plaintiff requested reconsideration and presented additional evidence, including copies of publications, recordings, conference programs; and other materials

prepared in the normal course of plaintiff's operations, which established to USPS's satisfaction that plaintiff was entitled to the permit. The permit was issued on March 3, 1978.

Plaintiff mailed almost 6 million pieces of mail during the time the application was pending. Some of this mail was deposited at the Washington, D.C. post office, and some was deposited at the Waldorf, Maryland post office. Of these mailings, 1,526,-479 pieces were mailed at the first-class rate and 4,428,285 pieces were mailed at the regular third-class bulk rate. None of the mailings at issue here were submitted to the Falls Church, Virginia post office where plaintiff had applied for the permit, and there is no indication that plaintiff made any effort to send these items at the special bulk third-class rate at the post offices where the mail was deposited.

On June 5, 1978, plaintiff wrote to the manager of the Northern Virginia Sectional Center, requesting a refund of $414,113.15, which it claimed as the difference between the amount it paid in postage for these mailings and the amount it would have paid had the postage been calculated using the special rate. The claim was denied by the Northern Virginia officials, primarily on the ground that refund requests would have to be sent to the post office where the mailings were made (in this case, Washington, D.C. and Waldorf, Maryland). The letter also stated that matter mailed at the first-class rate would not qualify for a refund.

On September 8, 1978, plaintiff wrote the Postmaster, Washington, D.C., requesting a refund of $198,655.18 for both first-class and third-class mailings at that office. This request was denied September 21, 1978, on the ground that no refund was due, since plaintiff had not filed a special rate application at the Washington, D.C. post office. On October 11, 1978, plaintiff requested that its refund application be forwarded to the Manager, Domestic Mail Classification Division, Rates and Classification Department. This was done and on February 14, 1978, USPS issued its final decision denying

plaintiff's application for refund. The decision read in pertinent part as follows:

The file shows that on March 23, 1977 Conservative Caucus Research, Analysis and Education Foundation, Inc., applied on Form 3624 to mail at special bulk third-class rates at Falls Church, Virginia. The application was approved on April 8, 1977.* The filing requirements in section 134.541, Postal Service Manual, clearly state that an application must be filed at the post office where mailings will be deposited. This also appears on the application itself. Yet it is not apparent that your client applied and received approval to mail at the special rates at any other post office besides Falls Church. The rules governing these applications were adopted under the general powers ascribed to the Postal Service by the provisions of Title 39, United States Code, section 401(2) which were carried forward from former Title 39, United States Code, section 501.

---

\* Note: The correct date is March 3, 1978.

The postal regulation governing refunds (section 147.211, Postal Service Manual) states that when postage and special or retail service fees have been paid, and no service is rendered, or when the amount collected was in excess of the lawful rate, a refund may be made. There is no indication that your client received no service on any of the mailings in question. Indeed service is not at issue here. In view of the postal regulations governing applications to mail at the special rates, and your client's failure to apply and receive approval to mail at those rates at the Washington, DC and Northern Virginia Sectional Center Facility [sic] post office, postage payment at those offices by your client was not in excess of the legal rate. Therefore, the refund requests are hereby denied.

## II.

With the passage of the Postal Reorganization Act of 1970, Pub.L. 91–375, 84 Stat. 719 (August 12, 1970), codified as title 39 of the United States Code, USPS was created,

replacing the Post Office Department. Although it was called "an independent establishment of the executive branch of the Government" (39 U.S.C. sec. 201), we have held that we have jurisdiction to award judgment against the United States on Tucker Act claims involving the USPS. *Butz Engineering Corp. v. United States*, 204 Ct.Cl. 561, 571, 499 F.2d 619, 624 (1974).

Congress granted USPS the power "to adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title." (39 U.S.C. sec. 401(2)). Pursuant to this broad grant of authority, USPS promulgated the Postal Service Manual (PSM) which was applicable to all of the matters and transactions involved in this action.[1]

The mail classification system which USPS had in effect during the events giving rise to this suit, divided the mail generally into four classes—from first-class through fourth-class mail. The regulations governing third-class mail were set forth in subchapter 130 of the PSM. Within the third class, there were three possible rates: single rate, regular bulk rate, and special bulk rate. The third-class special bulk rate was available only to nonprofit organizations and the regulations contained detailed provisions regarding the qualification requirements and the application procedures for obtaining the special bulk rate. The most significant requirement which nonprofit organizations were required to meet in order to obtain a permit authorizing mailings at the special bulk rate was set forth in PSM section 134.541, which provided as follows:

> Application on Form 3624, Application to Mail at Special Bulk Third-Class Rates

for Qualified Nonnprofit [sic] Organizations or Associations, must be filed by the organization or association *at the post office where mailings will be deposited.* The application must include evidence that the organization is nonprofit, and, if available, a certificate of exemption from Federal income tax should accompany the application. * * * [Emphasis supplied.][2]

The controversy in this case centers on the interpretation and application of this provision. None of the mailings in issue was deposited in the office where plaintiff's application was filed.

PSM section 134.542 provided that pending a decision on the application for a permit, bulk mailings could be handled in accordance with section 134.55, which provided as follows:

> Until final action is taken on the application, postage paid on the mailings may be at the special rates, provided that the mailer deposits with the postmaster an amount sufficient to cover the additional postage at the higher rates. (See 134.121 and 134.122). This deposit will be returned to the mailer if the application is approved. If the application is denied, the deposit will not be returned. The deposit will be converted into postage-due stamps which will be canceled and given to the mailer if no appeal is made. If appeal is made, action concerning the deposits will be deferred.

Plaintiff made no attempt to take advantage of this provision, and during its appeal contented itself with the erroneous argument that section 134.55 applies only to "an

---

1. The PSM was replaced by the Domestic Mail Manual on July 6, 1979, subsequent to all events material to this case. Both manuals were incorporated by reference into the Code of Federal Regulations during their effective dates at 39 C.F.R. sec. 111.1. Both manuals, along with their amendments, were published in the Federal Register. A list of the Federal Register citations was published in an Editor's Note immediately preceding 39 C.F.R. sec. 111.1 each year the PSM was in effect, although the current Editor's Note lists only the

publication and amendments of the Domestic Mail Manual.

2. This regulation was included in substantially the same language in section 642 of the Domestic Mail Manual, which now provides in pertinent part: " * * * application for authorization on Form 3624, *Application to Mail at Special Bulk Third-Class Rates for Qualified Nonprofit Organizations or Associations,* must be filed by the organization at the post office where mailings will be deposited. * * * " [DMM sec. 642.11.]

aggrieved mailer who has been denied a permit."[3]

The regulations regarding the refund of postage paid were set forth in PSM section 147, which contained the following sections that are material here:

147.2 REFUNDS.

.21 CONDITIONS THAT JUSTIFY REFUND.

.211 When postage and special or retail service fees have been paid, and no service is rendered, or when the amount collected was in excess of the lawful rate, a refund may be made:

   \*     \*     \*     \*     \*     \*

.216 Requests for refunds which are questionable, or which cannot be processed in accordance with the provisions of this section (147.2) should be forwarded to the postal services center serving the office where the request originated. The postal services center postmaster will return the request along with his ruling to the office which submitted the request.

.22 AMOUNT OF REFUND ALLOWABLE.

.221 Refund of 100 percent will be made:

a. When the Postal Service is at fault.

b. For the excess when postage or fees have been overpaid the lawful rate.

   \* \* \*

### III.

■ There is no doubt that the applicable statute, 39 U.S.C. sec. 401(2), as well as the regulations relating to refunds, granted the USPS wide discretion in determining when and under what conditions postal refunds will be made. Consequently, since we find that the decision denying plaintiff's claim for refund was not clearly wrong, nor contrary to law, it is entitled to finality. This is the rule which we have applied in a number of similar cases in which we have followed the holding of the Supreme Court in *United States v. Shimer*, 367 U.S. 374, 381–2, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908 (1961). *Port Authority of St. Paul v. Unit-*

*ed States*, 193 Ct.Cl. 108, 432 F.2d 455 (1970); *Drucker v. United States*, 204 Ct.Cl. 514, 498 F.2d 1350 (1974); *D. I. Z. Livestock Co. v. United States*, 210 Ct.Cl. 708, *cert. denied*, 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976).

Moreover, special deference must be paid to the agency's interpretations of its own regulations, for as stated in *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

The ultimate criterion is the administrative interpretation which becomes of controlling weight, unless it is plainly erroneous or inconsistent with the regulation.

*See also, Mountain States Tel. & Tel. Co. v. United States*, 204 Ct.Cl. 521, 499 F.2d 611 (1974).

■ Here the plaintiff was ineligible for the refund, because it failed to deposit its mailings at the post office where its application for the special rate was filed. Plaintiff also lost entitlement to a refund by failing to take advantage of PSM section 134.542, which would have allowed it to mail at the special rate during the pendency of its application, if it had deposited an amount sufficient to cover the additional postage at the higher rate.

■ We find that the agency's decision should also be sustained on the ground that there is a rational basis for the agency's interpretation of its regulations to the effect that refunds may be made only for mail deposited at the post office where the application for the special rate was filed. An affidavit submitted with defendant's motion shows that the Postal Service serves the public through 30,449 individual post offices, and that there are an estimated 250,000 outstanding special third-class rate authorizations. The requirement that the mailings be deposited where the application is filed is reasonably necessary to insure that proper accounting procedures are maintained and that refunds are made only on qualified mailings. In view of the structure and operation of the Postal Service,

---

**3.** Defendant's Brief, Appendix 40.

the requirement contained in PSM section 134.541 was reasonably related to the purpose of the applicable statutes and regulations. *Mourning v. Family Publication Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

■ Where administrative control has been authorized by Congress as in the situation before us, "the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body," *Mississippi Valley Barge Line Co. v. United States*, 292 U.S. 282, 286–87, 54 S.Ct. 692, 693–94, 78 L.Ed. 1260 (1934).

### IV.

■ In an effort to overcome its proven failure to meet the requirements of the regulations and to suggest some basis for recovery, plaintiff makes two principal contentions. First, plaintiff argues that the regulation in issue, PSM section 134.541, is invalid on the ground that it was promulgated in violation of the notice and comment requirements of chapter 5 of the Administrative Procedure Act, 5 U.S.C. sec. 553. This contention is supported by one court decision, *National Retired Teachers Association v. United States Postal Service*, 430 F.Supp. 141, 147 (D.D.C.1977). The holding was not affirmed by the Court of Appeals for the District of Columbia, which did not decide the question. *National Retired Teachers Association v. United States Postal Service*, 593 F.2d 1360, 1364 (D.C.Cir.1979). However, the Court of Appeals made note[4] of the several grounds which USPS had advanced in support of its contention that it was exempt from the requirements of 5 U.S.C. sec. 553. We find that there is substantial support for the claimed exemption, but it is unnecessary to

decide the issue, for we think it is clear that section 134.541 of the regulation falls within the "interpretive rule" exception to the notice and comment procedures. It is a clarification or explanation of the regulations which set forth the conditions under which refunds may be made. In *National Retired Teachers Association v. United States Postal Service*, the District of Columbia Circuit reached that conclusion regarding section 134.57 of the PSM, which limits the availability of the special bulk third-class rate to qualified nonprofit organizations and prohibits them from lending the privilege to cooperative mailings of material to organizations not authorized to mail at the special bulk rate. The same rate is involved in this action; the situation is analogous, and we reach the same result.

■ Plaintiff's second argument is closely related to its first main contention. Since it was not given notice of the proposed regulation and the right to comment thereon, plaintiff contends that the promulgation of the regulation was a denial of the due process right guaranteed to it under the Fifth Amendment to the Constitution. We find that there are several reasons why this contention must be rejected. First, since plaintiff failed to comply with the regulations, it has no legally cognizable property right to a refund, but at best only "an unilateral expectation" which does not rise to the level of a constitutional right of due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *National Consumer Information Center v. Gallegos*, 549 F.2d 822, 828 (D.C. Cir.1977). In addition, we have held in a number of cases that we have no jurisdiction over claims based upon the due process clause of the Fifth Amendment, because

---

**4.** " * * * USPS contends that its view is entirely supportable by a natural reading of sec. 410(a). In effect, insertion of the phrase 'including the provisions of chapters 5 and 7 of title 5' reflected a congressional conclusion that the APA was itself a law dealing with federal officers or employees. USPS finds further support in the numerous points in the Act at which Congress expressly made portions of the APA applicable, an effort that would have been su-

perfluous if the APA applied in any event. *See* 39 U.S.C. sec. 410(b) (1976) (Freedom of Information Act, 5 U.S.C. sec. 552 (1976); Privacy Act, 5 U.S.C. sec. 552a (1976); Sunshine Act, 5 U.S.C. sec. 552b (1976), apply to USPS); 39 U.S.C. sec. 3001(f) (1976) (mailability proceedings to be conducted in accordance with APA); 39 U.S.C. sec. 3603 (1976) (PRC action subject to APA)." [593 F.2d 1364–65 n.21.]

that clause does not obligate the Federal Government to pay money damages. *Carruth v. United States*, —— Ct.Cl. ——, 627 F.2d 1068 (1980), *Walton v. United States*, 213 Ct.Cl. 755 (1977) and *Muehlen v. United States*, 209 Ct.Cl. 690 (1976).

### V.

It follows from the foregoing opinion that plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted, and plaintiff's petition is dismissed.