**CONSUMERS SOLAR ELECTRIC POW-ER CORPORATION, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. CV 80–5175 AWT.**

United States District Court, C. D. California.

Jan. 22, 1982.

Joseph Calderon, Linden & Deutsch, New York City, and Benjamin R. Wiener, Culver City, Cal. for plaintiff.

Stephen S. Trott, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civil Division, James R. Sullivan, Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

TASHIMA, District Judge.

This action arises out of an alleged contract between plaintiff, Consumers Solar Electric Power Corporation ("Consumers Solar"), and defendant, United States Postal Service ("USPS" or the "Postal Service").

Consumers Solar is engaged in research and development in the field of solar energy, including the development and production of alternative fuels. As part of its efforts to market alternate fuels on a large scale basis, Consumers Solar approached USPS and offered to convert a postal jeep to operate on liquid hydride fuel at no cost to USPS. The converted jeep was to be test-operated for an agreed period. USPS accepted the offer and delivered the jeep to Consumers Solar. USPS claims that Consumers Solar represented that the jeep conversion would be completed by December 21, 1979. This asserted performance deadline was not met. The delay prompted USPS to order Consumers Solar to cease work on the jeep and to return it immediately to USPS. Consumers Solar complied with the USPS request and then instituted this action, alleging that the March 19, 1980, Order to Cease Performance constituted a breach of contract.

The complaint for breach of contract seeks primarily injunctive relief, although damages in an unspecified sum are also sought. Consumers Solar alleges that the contract is unique and that money damages are not an adequate remedy in that the conversion project gave it the opportunity to conduct comparative tests to determine the relative efficiency of the converted jeep, as compared to gasoline powered vehicles. Consumers Solar expected that, after a reasonable period of field testing, USPS would negotiate and enter into a long term contract to convert a substantial portion of the USPS fleet to operate on liquid hydride fuel. Injunctive relief in the form of specific performance is necessary, according to Consumers Solar, because it is impossible to measure damages without actually converting the jeep and making comparative tests.

USPS has moved to dismiss under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction.

Subject matter jurisdiction is here invoked under 28 U.S.C. § 1339, which governs actions arising under an Act of Congress relating to the Postal Service, and under § 113(a) of the Postal Reorganization Act, 39 U.S.C. § 409(a). USPS challenges jurisdiction on the grounds, first, that the action does not "arise under" an Act of Congress relating to the Postal Service and, second, that the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq., pre-empts whatever district court jurisdiction may previously have existed under § 409 and vests exclusive jurisdiction of contract claims against the Postal Service in the Court of Claims.

These jurisdictional issues appear to be of first impression. The parties have not cited and the Court has not found any reported case which squarely addresses the issue of district court jurisdiction of contract actions involving the Postal Service since enactment of the Contract Disputes Act. Consideration of that Act in light of accepted principles of statutory interpretation has persuaded the Court that only the Court of Claims has jurisdiction of this case; therefore, this action should be dismissed.

*I. Jurisdiction Under 28 U.S.C. § 1339*

Section 1339 grants district courts original jurisdiction of "any civil action arising under any Act of Congress relating to the postal service." Consumers Solar's complaint does not allude to any such "Act of Congress," nor does it imply that this case involves other than straightforward contract law. Because there is no basis for concluding that an Act of Congress is "a direct and essential element of the claim," *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (jurisdictional requirement under 28 U.S.C. § 1331); *Guinasso v. Pacific First Fed. Sav. & Loan Ass'n*, 656 F.2d 1364, 1366 (9th Cir. 1981) (same), § 1339 does not provide subject matter jurisdiction for Consumers Solar's breach of contract claim.[1]

1. In *Kennedy Electric Co. v. USPS*, 367 F.Supp. 828, 832 (D.Colo.1973), aff'd, 508 F.2d 954 (10th Cir. 1974), the court held that § 1339 conferred jurisdiction over a contract action.

However, there is no discussion of the "arising under" requirement of § 1339. I, therefore, conclude that the cases which discuss the "arising under" requirement of 28 U.S.C.

## II. The Conflict Between the Contract Disputes Act and the Postal Reorganization Act

Viewed outside of their historical contexts, § 10 of the Contract Disputes Act, 41 U.S.C. § 609, and § 113 of the Postal Reorganization Act, 39 U.S.C. § 409, present a seemingly irreconcilable conflict. Section 10 vests jurisdiction over United States government contracts, including those of executive agencies such as USPS, in the United States Court of Claims. Section 409, on the other hand, grants district courts original jurisdiction, concurrent with state courts, of cases involving the USPS. The contradiction between these two statutes can be properly resolved only by examination of the legislative history relating to their enactment.

The Postal Reorganization Act was enacted in 1970 primarily for the purpose of streamlining postal operations. H.R.Rep. No.91–1104, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News 3649, 3652–54. In essence, the Act enables USPS to operate somewhat like a private business while still remaining a part of the executive branch of the federal government. *Butz Engineering Corp. v. United States*, 499 F.2d 619, 623 (Ct.Cl.1974); *see generally* H.R.Rep. 91–1104, *supra*, [1970] U.S.Code Cong. & Ad.News at 3653–54; Senate Comm. on Post Office and Civil Service, 93d Cong., 1st Sess., Explanation of the Postal Reorganization Act and Selected Background Materials 167–68 (Comm. Print 1973). Thus, the reorganization served not to sever the Post Office Department from the government, but rather, to "recast[ ] it in the form of an independent establishment within the executive branch of the Government." H.R.Rep. 91–1104, *supra*, [1970] U.S.Code Cong. & Ad.News at 3654.

As part of this increased autonomy, Congress included within the Act a waiver of sovereign immunity, § 401; *Associates Financial Serv. of America, Inc. v. Robinson*, 582 F.2d 1 (5th Cir. 1978); *White v. Bloomberg*, 501 F.2d 1379, 1385 (4th Cir. 1974), and a jurisdictional grant to the district courts of "original but not exclusive jurisdiction over all actions brought by or against the Postal Service." § 409. Section 409 has been construed as not divesting the Court of Claims of jurisdiction over actions involving the post office. *Butz Engineering, supra*, 499 F.2d at 625. Thus, even after the reorganization, the Court of Claims continued to exercise jurisdiction over actions involving the Postal Service under the Tucker Act. *Conservative Caucus, Inc. v. United States*, 650 F.2d 1206, 1208–09 (Ct.Cl.1981); *Gordon v. United States*, 649 F.2d 837, 839 (Ct.Cl.1981); *McCloskey & Co. v. United States*, 530 F.2d 374, 378 (Ct.Cl.1976).

Given the continued status of USPS as a part of the executive branch of government, it is not surprising that contract disputes with USPS were expressly included in the Contract Disputes Act. 41 U.S.C. § 601(a). The Contract Disputes Act was enacted in 1978 and was designed to standardize the previously uncoordinated systems for resolving contract disputes with the government. The then existing procedures for resolving such disputes were a "mass of confusing and sometimes conflicting" regulations, statutes and agency board and court decisions. Government Procurement, Federal Contracts Rep., No. 759 at A–5 (Dec. 4, 1978) (Bureau of Nat'l Affairs, Inc., Wash., D.C.); S.Rep.No. 95–1118, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 5235, 5236. There was a "continuing power struggle between the boards and the courts." *Id.* at 5237. Congress sought to remedy the previous system because it perceived that government procurement procedures would have "a far-reaching impact on the economy of our society and on the success of many major Government programs ... The way poten-

§ 1331, a statute closely analogous to § 1339, are more persuasive. *See Philips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 128, 94 S.Ct. 1002, 1004, 39 L.Ed.2d 209 (1974) (per curiam); *Gully v. First National Bank, supra; Guinasso v. Pacific First Fed. Sav. & Loan Ass'n, supra; Smith v. Grimm*, 534 F.2d 1346, 1350 (9th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).

tial contractors view the disputes-resolving system influences how, whether, and at what prices they compete for Government contract business." *Id.* at 5238.

As part of its plan to develop a comprehensive system, Congress made the Contract Disputes Act applicable "to any express or implied contract . . . entered into by an executive agency . . . ." [2] 41 U.S.C. § 602; H.R.Rep.No.95–1556, 95th Cong., 2d Sess. 16 (1978). USPS is expressly designated as an "executive agency." 41 U.S.C. § 601(2); S.Rep.No.95–1118, *supra*, [1978] U.S.Code Cong. & Ad.News at 5250 ("Postal Service is covered, since it continues to receive a significant portion of its operating expenses from appropriated funds").

The Act provides two routes of review for resolving government contract disputes. A contractor may appeal a contracting officer's decision to the Board of Contract Appeals, 41 U.S.C. § 606, or, alternatively, may seek relief directly in the Court of Claims. 41 U.S.C. § 609; *Paragon Energy Corp. v. United States,* 645 F.2d 966, 970 (Ct.Cl.1981).

The legislative history contains extensive discussion on the desirability of allowing a contractor to bypass the agency boards and go directly to court. S.Rep.No.95–1118, *supra,* [1978] U.S. Code Cong. & Ad.News at 5245–46. The proponents of this view seemed to feel that without an express provision for judicial review in the Court of Claims, the contractor might be deprived of his day in court. *Id.* This concern strongly suggests Congress' understanding that the Contract Disputes Act would pre-empt the entire field of government contract remedies; that is, that unless access to the courts for resolution of contract disputes was provided in the Act, judicial review would be unavailable.

The appeals process was structured so that the district courts, which had previously exercised limited jurisdiction concurrent with the Court of Claims, were excluded.

*Id.* at 5244. In the same bill by which the Contract Disputes Act was enacted, Pub.L. No.95–563, 92 Stat. 2383, 2389, Congress amended the Tucker Act to remove district court jurisdiction over contracts governed by the Contract Disputes Act. 28 U.S.C. § 1346(a)(2) ("district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act"). In explaining the elimination of district court jurisdiction, the Senate Report states, with reference to § 8(g)(1), 41 U.S.C. § 607(g)(1) (agency boards of contract appeals), "The committees believe that there is no need to have two court jurisdictions, the Court of Claims and the U.S. district courts, in which to appeal agency board decisions. The Court of Claims can provide for the needs of all parties involved." *Id.* at 5243. Again, with reference to § 10(a), 41 U.S.C. § 609(a) (judicial review of board decisions), the Senate Report states that "U.S. district court jurisdiction is eliminated from government contract claims." *Id.* at 5244.

Congress also expressly limited the general applicability of the Contract Disputes Act in three areas. Contracts of the Tennessee Valley Authority are excluded from the Act's coverage unless they contain "a disputes clause requiring that a contract be resolved through an agency administrative process." 41 U.S.C. § 602(b). Likewise, contracts with foreign governments are exempted where an agency head determines that application of the Contract Disputes Act "would not be in the public interest." 41 U.S.C. § 602(c). Finally, appeals under § 8(g), 41 U.S.C. § 607(g), and suits under § 10, 41 U.S.C. § 609, arising out of maritime contracts, are to be governed by 46 U.S.C. §§ 741–52 and 781–90, to the extent that these provisions are not inconsistent with the Contract Disputes Act. 41 U.S.C.

---

**2.** § 602 specifies the types of contracts covered: for procurement of property, other than real property; for procurement of services; for procurement of construction, alteration, repair

or maintenance of real property; or, for the disposal of personal property. The contract here appears to be of the second type or a combination of the first and second types.

§ 603. These three provisions indicate that Congress did, indeed, contemplate exceptions to the applicability of the Contract Disputes Act, yet did not exclude contracts with USPS.

While there are apparently no cases which have considered the impact of the Contract Disputes Act on § 113 of the Postal Reorganization Act, 39 U.S.C. § 409, the language and legislative history of the Contract Disputes Act, as well as the important policy of standardizing all government contracts, indicate that USPS contracts should be governed by the Contract Disputes Act. Furthermore, the Contract Disputes Act is the more specific and more recent of the two statutes. The Supreme Court has held, in a variety of contexts, that a precisely drawn, detailed statute pre-empts more general remedies. *Brown v. General Services Administration*, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976), and cases cited therein. Accordingly, this Court holds that the Contract Disputes Act pre-empts whatever jurisdiction may previously have existed under § 409.[3]

In so holding, I recognize that Consumers Solar may well be unable to obtain specific performance, which it claims is its only adequate remedy. While the Court of Claims is empowered to award limited equitable relief in the form of reinstatement, 28 U.S.C. § 1491, or reformation, *United States v. Milliken Imprinting Co.*, 202 U.S. 168, 173–74, 26 S.Ct. 572, 50 L.Ed. 980 (1906); *Paragon Energy Corp. v. United States, supra*, 645 F.2d at 975, specific performance appears to be unavailable. *See* H.R.Rep.95–1556, *supra*, at 37–38 (explaining rationale against injunctive relief); *Richardson v. Morris*, 409 U.S. 464, 465–66, 93 S.Ct. 699, 630–31, 34 L.Ed.2d 647 (1973) (per curiam); *Rowe v. United States, supra*, 633 F.2d at 802; *cf. Jablon v. United States*, 657 F.2d 1064, 1070 (9th Cir. 1981) (government has not waived sovereign immunity with regard to promissory estoppel cause of action brought under Tucker Act). Regardless of whether such relief might have been available under § 409, *see Kennedy Electric Co. v. USPS, supra*, 367 F.Supp. at 841 (granting an equitable lien under § 409), Congress, by eliminating district court jurisdiction in actions governed by the Contract Disputes Act, appears to have manifested its intent to limit contract remedies

**3.** No question is here presented whether jurisdiction in the Court of Claims is exclusive, in the sense that district court jurisdiction under any other federal statute is precluded. I decide only that the Contract Disputes Act implicitly repeals § 113 of the Postal Reorganization Act, 39 U.S.C. § 409, as to contract claims against USPS and that the Court of Claims has jurisdiction of this case.

It has been held, in varying contexts, that notwithstanding exclusive jurisdiction in the Court of Claims of monetary claims against the United States, a district court may adjudicate nonmonetary claims, provided there is a waiver of sovereign immunity and some other basis for subject matter jurisdiction. *See, e.g., Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376 (9th Cir. 1981) (review of agency action under Administrative Procedure Act and declaratory judgment; waiver of sovereign immunity found under 5 U.S.C. § 702 and jurisdiction under 28 U.S.C. § 1331); *Rowe v. United States*, 633 F.2d 799 (9th Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981) (review of agency action under Administrative Procedure Act; 5 U.S.C. § 702 and 28 U.S.C. § 1331); *Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (injunction

against discharge which was violative of constitutional and statutory rights; 5 U.S.C. § 702 and 28 U.S.C. § 1331); *Glines v. Wade*, 586 F.2d 675 (9th Cir. 1978), *rev'd on other grounds sub nom. Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 609, 62 L.Ed.2d 540 (1980) (affirming district court's power to award declaratory and equitable relief; 5 U.S.C. § 702 and 28 U.S.C. § 1331).

The more specific question of whether the Tucker Act vests exclusive jurisdiction in the Court of Claims over contract actions involving more than $10,000 was left open by the Ninth Circuit in *Marcus Garvey Square, Inc. v. Winston Burnett Constr.*, 595 F.2d 1126, 1132 (9th Cir. 1979). The court noted that other jurisdictions have differed in their answers to this question. *Id.* In *Marcus Garvey*, the court did not need to reach the issue because no other waiver of sovereign immunity or alternative grant of jurisdiction was available. It is likewise unnecessary to decide here whether the jurisdiction vested in the Court of Claims by the Contract Disputes Act is exclusive, because plaintiff has neither invoked nor made a colorable claim of any other purported statutory grant of district court jurisdiction respecting non-monetary relief.

to money damages, reinstatement and reformation. It is well established that the government's waiver of sovereign immunity and its consent to be sued may be subject to any conditions which Congress sees fit to require. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *International Engineering Co., Div. of A–T–O, Inc. v. Richardson*, 512 F.2d 573, 577 (D.C.Cir.1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976); *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972). In actions governed by the Contract Disputes Act, government contractors are now limited to judicial review in the Court of Claims and, accordingly, are entitled only to such relief as that court may grant.

In accordance with the foregoing, it is ordered that this action be dismissed for lack of subject matter jurisdiction.[4]

---

**4.** Under 28 U.S.C. § 1406(c), the action may be transferred to the Court of Claims in lieu of dismissal. However, plaintiff has made no such request and there is no showing that it would be "in the interest of justice" to do so.