**Rosalind T. SPODEK, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. CIV.A. 98–3159.

United States District Court,
E.D. Pennsylvania.

Dec. 1, 1998.

Axel A. Shield, II, Bensalem, for Plaintiffs.

Cedric D. Bullock, U.S. Attorney's Office, James G. Sheehan, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. BACKGROUND

Plaintiffs are the lessors under two (2) leases. The defendant is the United States Postal Service ("USPS" or "defendant"), the lessee under both leases.[1] Plaintiffs claim that defendant remains in possession of the leased premises after the expiration of the leases without paying the full amount of the rent due under the leases. Plaintiffs seek damages equal to $106,390.30 for unpaid post-lease rent as of April 1, 1998, and continuing to the present.

Lease I concerns an office building. The initial term of Lease I ran from January 15, 1962 to January 14, 1977 with four (4) five-year renewals. The renewal options were all exercised, the last one on January 15, 1992. Therefore, under the last renewal option exercised, the lease expired on January 14, 1997. Lease II concerns a parking lot adjacent to the building leased under Lease I. The term of Lease II ran from December 1, 1991 to January 31, 1997.

The issue in this case, as to each of the two (2) leases, is whether jurisdiction to adjudicate these claims lies with either the Agency Board of Contract Appeals or the United States Court of Federal Claims, as claimed by the defendant, or this Court, as claimed by the plaintiffs.

### II. LEGAL ANALYSIS

A. *39 U.S.C. § 409(a) Grants Jurisdiction to this Court Over Actions in which the United States Postal Service is a Party.*

■ Plaintiffs rely for its jurisdictional claim on 39 U.S.C. § 409(a) (the Postal Reorganization Act ("PRA")), which provides that "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." Precisely because the USPS is a party, defendant contends that the Court is without jurisdiction to hear the case. Defendant points to 39 U.S.C. § 409(a), which waives sovereign immunity for actions involving the USPS. Defendant explains that that statute is a "sue and be sued" statute rather than a grant of jurisdiction to federal district courts. 39 U.S.C. § 401(1) ("The Postal Service shall have the following general powers: (1) to sue and be sued in its own name ...."). The Third Circuit has addressed this issue directly.

In *Licata v. United States Postal Service,* 33 F.3d 259 (3d Cir.1994), plaintiff brought a breach of contract action against defendant, the USPS. The district court granted the USPS' motion to dismiss on the grounds that the court did not have subject matter jurisdiction pursuant to 39 U.S.C. § 409(a), and that the Tucker Act barred contract actions against the USPS in the district court.[2] The Third Circuit reversed, finding that "the words of section 409(a) 'are a clear and unequivocal grant of jurisdiction to the district courts ... [and] the words of the first sentence of Section 409(a) convey a meaning as plain as any we can recall seeing.'" *Id.* at 261

---

1. Plaintiffs initially commenced this action against the United States of America ("USA") as the defendant-lessee, rather than the USPS, because the USA was the named lessee on the original lease executed in 1962 ("Lease I"). However, the rights and obligations of the USA regarding occupancy of the premises leased under Lease I have since vested in the USPS as a consequence of the transfer of assets from the USA to the USPS as required by the Postal Reorganization Act. 39 U.S.C. § 2002(c). The USPS is the named lessee on a related lease at issue that was executed in 1991 ("Lease II"). Consequently, plaintiffs filed an amended complaint (doc. no. 5) reflecting the USPS as the proper defendant.

2. The Tucker Act states that for non-tort monetary claims against the United States that exceed $10,000, as well as civil actions against the United States founded upon any express or implied contract, district courts do not have jurisdiction. 28 U.S.C. § 1346(a)(2). The Third Circuit concluded that "it is well settled that a claim brought against the Postal Service in its own name is not a claim against the United States and thus is not governed by the Tucker Act." *Licata,* 33 F.3d at 263.

(citing *Continental Cablevision v. United States Postal Service*, 945 F.2d 1434, 1437 (8th Cir.1991)). While acknowledging a division among federal courts as to the proper interpretation of section 409(a), the Third Circuit concluded that it is section 401(1) that speaks to the USPS' sovereign immunity and ability to sue and be sued, and that "absent some other statutory bar, section 409(a) grants district courts subject matter jurisdiction over actions to which the Postal Service is a party." *Licata*, 33 F.3d at 262–63. Therefore, in this Circuit, it is settled that 39 U.S.C. § 409(a) granted jurisdiction to the district courts over matters in which the USPS is a party to the action.

### B. Does the CDA Divest the District Court of Jurisdiction and Vest Exclusive Jurisdiction Over Certain Procurement Contracts in the Agency Board of Contract Appeals or the United States Court of Federal Claims?

Defendant contends that, even if section 409(a) granted the district court jurisdiction to hear cases where the USPS was a party, the later enacted Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, divested the district court of such jurisdiction. The CDA was enacted on November 1, 1978 and became effective on March 1, 1979. Its sweep is broad, establishing a "comprehensive system for adjudicating particular contract claims against the government."[3] *Prefab Products, Inc. v. United States Postal Ser-*

*vice*, 600 F.Supp. 89, 90 (D.Fla.1984). Section 602(a) of the CDA provides that:

> Unless otherwise specifically provided herein, this chapter applies to any express or implied contract ... entered into by an executive agency for—
>
> (1) the procurement of property, other than real property in being;
>
> (2) the procurement of services;
>
> (3) the procurement of construction, alteration, repair or maintenance of real property; or
>
> (4) the disposal of personal property.

41 U.S.C. § 602(a); *see also Hudome v. United States Postal Service*, No. 87–1565, 1988 WL 33926, at *1 (E.D.Pa. Mar.31, 1988). Expressly, the CDA states that the USPS is an executive agency covered under its terms. 41 U.S.C. § 601(2).[4]

The courts are divided as to whether the CDA vests exclusive jurisdiction over certain contract claims against an executive agency, such as the USPS, in either the United States Court of Federal Claims or the Agency Board of Contract Appeals, rather than in the district court. Some courts have concluded that the CDA divests district courts of jurisdiction over certain contract claims, including those in which the USPS is a party. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890–91 (6th Cir.1998) (holding that the detailed provisions of the CDA preempted more general jurisdictional provisions, and that even if the Small Business Administration's "sue and be sued" clause was an independent jurisdictional

---

3. The purpose of the CDA is to "help to induce resolution of more contract disputes by negotiation prior to litigation; equalize the bargaining power of the parties when a dispute exists; provide alternate forums suitable to handle different types of disputes; and insure fair and equitable treatment to contractors and Government agencies ...." S.Rep. No. 95–1118 (1978), *reprinted in* 978 U.S.C.C.A.N. 5235, 5253; *see also United States v. Kasler Elec. Co.*, 123 F.3d 341, 346 (6th Cir.1997) ("The CDA is intended to keep government contract disputes out of district courts; it limits review of the merits of government contract disputes to certain forums, both to limit the waiver of sovereign immunity and to submit government contract issues to forums that have specialized knowledge and experience.").

4. The CDA provides detailed provisions for adjudication of contract disputes. Section 605 pro-

vides for a decisionmaking process by a contracting officer when a contractor has a claim against the government. 41 U.S.C. § 605(a). Pursuant to sections 606 and 607, a contractor can appeal a decision of a contracting officer to the Agency Board of Contract Appeals, which itself can be appealed to the United States Court of Appeals for the Federal Circuit. 41 U.S.C. §§ 606, 607(d), 607(g). Alternatively, as provided for in section 609(a)(1), "in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary." 41 U.S.C. § 609(a)(1).

grant, the CDA, in effect, withdrew that grant); *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 241–42 (D.C.Cir.1995) ("The Contract Disputes Act, however, appears to be the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions.") (citing *Brown v. GSA*, 425 U.S. 820, 834, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)); *United States of America v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir.1995) ("The review procedures under the CDA are exclusive of jurisdiction in any other forum. Thus, federal district courts lack jurisdiction over government claims against contractors which are subject to the CDA."); *Jackson v. United States Postal Service*, 799 F.2d 1018, 1022 (5th Cir.1986) (noting that "[w]ith the enactment of the Contract Disputes Act, the Claims Court [currently known as the United States Court of Federal Claims] received exclusive jurisdiction to hear any claim arising from a breach of a USPS procurement contract covered by the Act.").

Other courts hold, rather, that the CDA provides a nonexclusive avenue in which contract disputes against executive agencies can be resolved. *See Wright v. United States Postal Service*, 29 F.3d 1426, 1428 (9th Cir. 1994) (concluding that the CDA is not the exclusive basis for litigation of claims relating to government contracts, and that the CDA did not eliminate subject matter jurisdiction over subcontractors' actions to establish and foreclose equitable liens against the USPS); *Marine Coatings of Alabama, Inc. v. United States of America*, 932 F.2d 1370, 1377 (11th Cir.1991) (holding that while the Federal Tort Claims Act and the CDA both waive immunity, "there is no need to apply either if another method of bringing suit is available," and that "the CDA does not supersede admiralty provisions providing for another means of recovery"); *Pike, L.P. v. United States Postal Service*, 886 F.Supp. 487, 490 (E.D.Pa. 1995) ("Thus, where a contract falls under both the CDA and the PRA, § 409(a) empowers district courts to hear disputes arising out of that contract.").[5] The Third Circuit expressly reserved deciding this issue in *Licata v. United States Postal Service*, 33 F.3d 259, 264 n. 6 (3d Cir.1994).

■ This Court finds that the CDA vests exclusive jurisdiction with either the Agency Board of Contract Appeals or the United States Court of Federal Claims over claims regarding procurement contracts entered into by an executive agency, such as the USPS. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890–91 (6th Cir. 1998); *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 241–42 (D.C.Cir.1995); *United States of America v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir.1995).

In a very recent decision, *Campanella v. Commerce Exchange Bank*, 137 F.3d 885 (6th Cir.1998), the Sixth Circuit found that under the CDA, the district court lacked subject matter jurisdiction over a contract action asserted against the Small Business Administration ("SBA"), an executive agency. The Sixth Circuit rejected plaintiff's argument that, irrespective of the CDA, the "sue

---

5. In *Pike, L.P. v. United States Postal Service*, 886 F.Supp. 487 (E.D.Pa.1995), Judge Ditter held that the CDA did not divest district courts of the jurisdiction granted by 39 U.S.C. § 409(a) based on an analysis of the CDA's language. Judge Ditter focused his analysis on section 609(a) of the CDA, which reads, "a contractor *may* bring an action directly on the claim in the United States Court of Federal Claims . . . ." *Id.* at 490 (emphasis added) (citing 41 U.S.C. § 609(a)). Based on its reading of the word "may," the court concluded that the provision in section 609(a) providing for jurisdiction in the United States Court of Federal Claims was permissive and not mandatory because, after analyzing other portions of the CDA, "[t]he CDA plainly demonstrates that when Congress intended a provision to be mandatory it used the word 'shall,' and when it intended a provision to be permis-

sive or discretionary it used the unmodified word 'may.' " *Id.*

While this Court respectfully reaches a conclusion contrary to that reached by Judge Ditter, this Court recognizes that Judge Ditter, at the time *Pike* was decided, did not have the benefit of subsequently decided Circuit caselaw, such as *Campanella v. Commerce Exchange Bank*, 137 F.3d 885 (6th Cir.1998), *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234 (D.C.Cir.1995), and *United States of America v. J & E Salvage Co.*, 55 F.3d 985 (4th Cir.1995), all of which found that the CDA divests district courts of jurisdiction and vests exclusive jurisdiction in the Agency Board of Contract Appeals or the United States Court of Federal Claims over claims involving procurement contracts entered into by an executive agency.

and be sued" provision in the SBA statute, similar to the one contained in 39 U.S.C. § 409(a), conferred jurisdiction upon district courts. *Id.* at 890–91. In finding that the CDA preempted the SBA's "sue and be sued statute," and divested the district court of jurisdiction to hear the contract claim against the SBA, the court concluded that the CDA "appears to be the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions [and] purports to provide final and exclusive resolution of all disputes arising from government contracts covered by the statute." *Id.* at 891 (citing *A & S Council Oil Co. Inc. v. Lader,* 56 F.3d 234, 241–42 (D.C.Cir.1995)).

Additionally, in *United States of America v. J & E Salvage Co.,* 55 F.3d 985 (4th Cir.1995), the Fourth Circuit held that the CDA prohibited a district court from exercising jurisdiction over a contract claim by the United States against a government contractor. Jurisdiction in that case was claimed under 28 U.S.C. § 1345, which states: *"Except as otherwise provided by Act of Congress,* the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States .... " 28 U.S.C. § 1345 (emphasis added). The Fourth Circuit found that the CDA was one area in which Congress had so "otherwise provided." The court concluded that the CDA was a comprehensive statutory scheme for resolving contractual conflicts involving the United States, which was exclusive of jurisdiction in any other forum. *J & E Salvage,* 55 F.3d at 987. The Fourth Circuit also noted that it was clear from the legislative history that "U.S. District Court jurisdiction is eliminated from government contract claims." *Id.* (citing S.Rep. No. 95–1118 (1978), *reprinted in* 978 U.S.C.C.A.N. 5235, 5244). *Accord A & S Council Oil Co. Inc. v. Lader,* 56 F.3d 234, 241 (D.C.Cir.1995) (holding that the precisely drawn CDA preempts more general grants of jurisdiction, and provides for uniquely qualified fora for the resolution of certain contractual disputes, unless stated otherwise by Congress).

The Court finds the rationales set forth by the recent decisions of the Fourth, Sixth, and District of Columbia Circuits to be persua-

sive. In short, granting district courts concurrent jurisdiction over certain government contracts would interfere with the congressional goal of achieving judicial efficiency by limiting particular government procurement contracts to certain fora, the Agency Board of Contract Appeals or the United States Court of Federal Claims, that have specialized knowledge. Therefore, the Court finds that the CDA vests exclusive jurisdiction over certain procurement contracts to which an executive agency is a party with the Agency Board of Contract Appeals or the United States Court of Federal Claims.

C. *The CDA Divested the Court of Jurisdiction to Hear Claims for the Procurement of Property that are Covered by the CDA as to Contracts Entered into After the CDA's Effective Date.*

1. *Real estate leases are covered by the CDA.*

 To come within the parameters of the CDA, plaintiffs must show that Lease I and Lease II are either express or implied procurement contracts entered into by the USPS. 41 U.S.C. §§ 602(a), 601(2). The procurement provision applicable in this matter is "the procurement of property, other than real property in being." *Id.* at § 602(a). Government leases are considered the procurement of property, other than real property in being, which fall within the scope of the CDA. *See Forman v. United States,* 767 F.2d 875, 879 (Fed.Cir.1985) (finding that the Office of Federal Procurement Policy Act's language that excludes contracts to procure "real property in being" does not apply to newly-created lease agreements, and that such lease agreements fall within the purview of the Policy Act and the corresponding provisions of the CDA); *Richardson v. United States,* 895 F.2d 1421 (Fed.Cir.1990), *aff'g* 17 Cl.Ct. 355, 355 (Cl.Ct.1989) (deciding a landlord-tenant dispute involving the lease of a commercial space by the United States, through a General Services Administrator, pursuant to the provisions of the CDA); *United States v. Black Hawk Masonic Temple Ass'n, Inc.,* 798 F.Supp. 646, 648 (D.Colo. 1992) ("[I]t has long been settled that the Contract Disputes Act applies to leases of

real property, including those by the Postal Service."). The rationale for finding that government leases of real property are covered by the CDA is that a leasehold does not exist until the government enters into a lease agreement. *Forman*, 767 F.2d at 879. The lease contract entered into by the executive agency creates a new interest in the land; it does not result in the acquisition a preexisting interest in the land, such as by conveyance of a fee simple title or eminent domain. *Id.* Because Lease I and Lease II are leasehold contracts entered into by the USPS, which created a new interest in the land, Lease I and Lease II are express contracts for the procurement of property, other than real property in being, which fall within the CDA.

2. *The Court has no jurisdiction to hear the claims as to Lease II.*

■ Applying these principles to Lease II, the Court concludes that it does not have jurisdiction to hear the claims relating to Lease II. Lease II is an express contract for the procurement of property, other than real property in being, to which an executive agency, the USPS, is a party is subject to the CDA. Therefore, because Lease II was entered into in 1991, after the effective date of the CDA, March 1, 1979, the CDA vests exclusive jurisdiction over Lease II in the Agency Board of Contract Appeals or the United States Court of Federal Claims.

■ Moreover, even if this Court were to find that the CDA did not vest exclusive jurisdiction in the Agency Board of Contract Appeals or the United States Court of Federal Claims as a matter of statutory construction, Lease II would still be subject to the provisions of the CDA under a forum selection clause contained in Lease II. Specifically, the contract clause provides:

> This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. §§ 601–613) ("the Act"). Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

This forum selection provision selects the resolution fora provided for under the CDA, i.e., the Agency Board of Contract Appeals

or the United States Court of Federal Claims, as the exclusive fora in which to bring this action.

A recent case in this court addressed this issue. In *Deshields v. Chuong*, No. 96–3402, 1996 WL 397473, at *1 (E.D.Pa. July 5, 1996), plaintiff filed a negligence action against the defendants-owners of premises due to a personal injury that occurred on the premises. Defendants in turn filed a third-party action against the USPS as lessee of the premises sounding in tort and a contract claim for indemnification. The USPS moved for dismissal arguing that the district court lacked subject matter jurisdiction over the breach of contract claim. In response, plaintiffs contended that 39 U.S.C. § 409(a) provided an independent basis for jurisdiction in the district court. The Court granted the USPS' motion to dismiss pointing to the explicit terms of the lease. The lease in *Deshields* stipulated that " '[t]his contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. §§ 601–613) ... [and][e]xcept as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.' " *Id.* at *1. Despite plaintiffs' assertion that section 409(a) was a jurisdictional grant to the district court, Judge Bartle concluded that:

> [T]he lease between [plaintiffs] and the USPS specifically provides that all claims and disputes must be resolved under the CDA. The lease does not mention the PRA. By providing that the CDA would apply to all disputes, the USPS contends that all claims must be adjudicated, if in a court, in the Court of Federal Claims. Otherwise, the language in the lease referring to the CDA would be mere surplusage. There can be no reason to refer to the CDA except to specify the forum for the resolution of disputes.

*Id.* The Court concludes that, as in *Deshields*, the language in Lease II is clear and unambiguous, and serves to vest adjudication of all disputes under the contract in the Agency Board of Contract Appeals or the United States Court of Federal Claims.

3. *The Court has jurisdiction to hear the claims as to Lease I.*

■ The final question is whether the CDA applies to Lease I, which, as plaintiffs

point out, was entered into on January 15, 1962, prior to the effective date of the CDA. The CDA provides that contracts entered into prior to its enactment are not covered by its provisions.[6] Since the CDA was enacted on November 1, 1978, and Lease I was executed in 1962, the provisions of the CDA do not apply to Lease I. *See Jackson v. United States Postal Service,* 799 F.2d 1018, 1022 (5th Cir.1986) (finding that the court could hear claims regarding a USPS lease if it was entered into prior to the effective date of the CDA); *Borough of Berlin v. United States,* No. 93–1649, 1993 WL 172365, at *2 (D.N.J. May 20, 1993) (recognizing that the district court would have jurisdiction over the government lease only if the contract was entered into prior to March 1, 1979, which was one hundred twenty days after the CDA's enactment,); *Eastern, Inc. v. Shelly's of Delaware,* 721 F.Supp. 649, 652–653 (D.N.J. 1989) ("It is undisputed that prior to the enactment of the CDA, subcontractors could bring equitable actions in district courts against the USPS.").

Defendant points out that Lease I provided for four (4) five-year renewal options, all of which were exercised, the last of which the USPS exercised on January 15, 1992. Consequently, according to defendant, because the USPS exercised its renewal options after the 1978 enactment of the CDA, the renewal options, and by extension the original Lease I, are subject to the provisions of the CDA. The issue is whether the renewal options provided for in 1962 when Lease I was executed, when exercised in 1992, either extended the term of Lease I, or created a new leasehold. To put it another way, if the exercise of a last renewal option in 1992 after the effective date of the CDA in 1979 created a new leasehold, the CDA will apply and this Court will have no jurisdiction over this claim.

■ The issue was addressed in *Jackson v. United States Postal Service,* 799 F.2d 1018 (5th Cir.1986). *Jackson* adopts the gen-

eral contract rule that " 'a lessee's exercise of [an option to renew a lease] leaves the existing lease intact; and it has been held to operate at once as a renewal lease similar to the existing one, no execution of a new leasehold being necessary.' " *Id.* at 1022 (citing 1A Corbin on Contracts § 264, at 530 (1963)). For that reason, the *Jackson* Court found that the plaintiff, who entered into a pre-CDA lease with the USPS containing post-CDA renewal options, which were exercised, and who subsequently commenced a contract action against the USPS, had the option of proceeding either under the CDA or under the district court's concurrent jurisdiction, as provided for by the prior law. *Id.; accord Borough of Berlin v. United States,* No. 93–1649, 1993 WL 172365, at *2 (D.N.J. May 20, 1993).

■ This result under federal common law is consistent with Pennsylvania law. Pennsylvania is the situs of the leasehold covered by Lease I. Federal common law looks to relevant state law to select the appropriate substantive rule to apply. *See Continental Cablevision of St. Paul, Inc. v. United States Postal Service,* 945 F.2d 1434, 1441 (8th Cir.1991) (" 'In determining what particular doctrine to apply in a particular suit, the court [applying federal common law] will often select a rule of state law.' ") (citing *Western Securities Co. v. Derwinski,* 937 F.2d 1276, 1280 (7th Cir.1991)). Pennsylvania law acknowledges that leases are controlled by principles of contract law, such that in ascertaining the parties' intentions, the lease should be considered as a whole. *See Cusamano v. DiLucia, Inc.,* 281 Pa.Super. 8, 421 A.2d 1120, 1121 (Pa.Super.1980) ("As in the case of other written contracts, the purpose in interpreting a lease is to ascertain the intention of the parties, and such intention is to be gleaned from the language of the lease."). In this case, the applicable law is consistent with federal common law, in finding that a lessee's exercise of

---

6. Section 16 of Pub.L. 95–563, 92 Stat. 2391, which is codified as a note to 41 U.S.C. § 601, provides:

This Act ... shall apply to contracts entered into one hundred twenty days after the date of enactment [November 1, 1978]. Notwith-

standing any provision in a contract made before the effective date of this Act, the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter.

a renewal option that was contained in the original lease is merely a continuation of the original lease. *Pettit v. Tourison,* 283 Pa. 529, 129 A. 587, 587–88 (Pa.1925) (distinguishing a lease renewal provision from a purchase option as a continuance of the tenancy for a further period, operating only to continue the lease agreement); *Bennetch v. Dreistadt,* 242 Pa.Super 529, 364 A.2d 398, 400–01 (Pa.Super.1976) (same). Thus, Lease I is not subject to the CDA because Lease I was executed prior to the CDA's enactment, and the exercise of the renewal options by the lessee after the CDA's enactment does not create a new leasehold subject to the CDA. The Court concludes, therefore, that as to Lease I, plaintiffs have the choice as to whether to proceed in district court under the concurrent jurisdiction granted by the 39 U.S.C. § 409(a), or in the Agency Board of Contract Appeals or the United States Court of Federal Claims, as provided for in the CDA.

## III. CONCLUSION

 The Court finds that 39 U.S.C. § 409(a) vested jurisdiction in the federal district courts to hear claims where the USPS was a party. However, the subsequently enacted CDA divested the federal district courts of jurisdiction over certain procurement contracts to which an executive agency, including the USPS, is a party and which were entered into after the date of its enactment. The CDA vested exclusive jurisdiction over contract claims in which the USPS is a party in either the Agency Board of Contract Appeals or the United States Court of Federal Claims.[7] The Court does not have subject matter jurisdiction as to Lease II because Lease II is a procurement contract within the provisions of the CDA and was entered into after the effective date of the CDA. The Court also finds that it is without jurisdiction to hear claims relating to Lease II because the lease itself contains a forum selection clause that places jurisdiction over disputes arising under or relating to the lease with the fora specified within the provisions of the CDA, the Agency Board of Con-

tract Appeals or the United States Court of Federal Claims.

Finally, as to Lease I, the Court finds that it has jurisdiction because Lease I was entered into before the CDA became effective. The USPS' exercise of renewal options, which extended the leasehold period to a date after the effective date of the CDA, did not create a new leasehold, and therefore, the CDA does not apply.

An appropriate Order follows.

### ORDER

**AND NOW,** this 1st day of December, 1998, upon consideration of defendant's Motion to Dismiss (doc. no. 6) and the responses of plaintiffs (docs. no. 10 and 13), and after oral argument with counsel for both parties, it is hereby **ORDERED** that defendant's motion is **DENIED IN PART AND GRANTED IN PART.**

**AND IT IS SO ORDERED.**

---

7. A real estate lease is a procurement contract within the meaning of the CDA.