**FOUR STAR AVIATION,
INC., Plaintiff,**

v.

**UNITED STATES POSTAL
SERVICE, Defendant.**

No. Civ. 1999–039.

District Court,
Virgin Islands,
St. Thomas Division.

Sept. 21, 2000.

James L. Derr, St. Thomas, VI, for the plaintiff.

Joycelyn Hewlett, Asst. U.S. Attorney, St. Thomas, VI, for the defendant.

### MEMORANDUM

MOORE, District Judge.

## I. INTRODUCTION

This matter is before the Court on the United States Postal Service's ["USPS" or "defendant"] motion to dismiss Four Star Aviation's ["Four Star" or "plaintiff"] complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). After considering the arguments presented by counsel at a hearing on this motion, and reviewing the pleadings and relevant case law, the Court will transfer the case to the United States Court of Federal Claims.

## II. FACTUAL BACKGROUND

As gleaned from the parties' pleadings and from the argument presented by counsel, the following are the facts and circumstances giving rise to the current dispute. In July of 1998, the USPS issued a solicitation to would-be bidders, requesting proposals for air transportation services from regional air carriers. (*See* Motion to Dismiss Ex. A (Bid Solicitation).) The USPS did not direct the solicitation at a specific air route but issued it on a national basis. The solicitation made clear that multiple contracts would be awarded, mail carriage would be assigned to the selected carriers based on various factors (e.g., carrier performance, flight types, and times, etc.), and included requirements and regulations for carriers wishing to submit bids. The USPS received 31 bids from regional air carriers. In September, 1998, the USPS accepted all 31 bids and awarded all 31 contracts pursuant to this solicitation. Of these 31 bids, only three came from air carriers serving the Puerto Rico–Virgin Islands market. These air carriers were Four Star, Tol Air Services, Inc. ["Tol Air"], and MBD Corporation ["MBD"].

Each of these carriers submitted a proposed "Terminal Handling Rate" as part of their bids. This is the cost per pound of carrying the mail. The three Puerto Rico–Virgin Islands carriers proposed the following terminal handling rates:

| | | |
|---|---|---|
| Four Star | = | $0.41/pound |
| Tol Air | = | $0.39/pound |
| MBD | = | $0.33/pound |

In October, 1998, Four Star protested to the USPS Contract Office the award of the contracts to Tol Air and MBD. Four Star argued that Tol Air and MBD were commonly owned and controlled corporations and therefor, both were ineligible to receive contracts per the solicitation. In a decision rendered by the Senior Counsel for Contract Protests and Policies, the USPS found that Tol Air and MBD were in fact commonly owned and controlled corporations. (Motion to Dismiss Ex. B ["USPS Decision"].) The USPS, however, only terminated the contract with Tol Air (the higher per pound carrier) and let stand the contract awarded to MBD. The USPS reasoned that the "identified prejudice does not require the termination of all of the contracts awarded to the commonly

controlled entities; it will be sufficient to terminate the contracts to the higher-priced common entities." (USPS Decision at 10.)

Four Star, a Virgin Islands corporation, subsequently filed suit in this Court seeking what it has styled as injunctive relief, namely: (1) an order prohibiting the USPS from granting contracts to those not in compliance with USPS solicitation regulations, i.e., MBD; (2) specific performance via an order directing the USPS to pay to Four Star monies it otherwise would have received had the USPS not improperly awarded contracts to entities not complying with these regulations, i.e., MBD; and (3) declaratory relief by an order adjudicating the rights and liabilities of the parties.

## III. DISCUSSION

### A. Four Star's Claims of Jurisdiction

■ Before reaching the merits of Four Star's arguments, the Court must determine whether it has jurisdiction over this matter. The plaintiff has the burden of showing federal jurisdiction. *See* FED. R.CIV.P. 8(a); *see also Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1321 (3d Cir.1972).

Four Star asserts four bases of jurisdiction: the Administrative Procedures Act ["APA"], 5 U.S.C. §§ 701–06; federal question, 28 U.S.C. § 1331, postal matters; 28 U.S.C. § 1339; and the Postal Reorganization Act of 1970 ["PRA"], 39 U.S.C. §§ 401–13. A review of these alleged bases shows that the only potentially viable basis is the jurisdictional grant found in the PRA. The other three jurisdictional grounds fail for the following reasons.

■ Section 410 of the PRA specifically exempts the USPS from the application of the APA:

1. Even if the Court were to find it had federal question jurisdiction, it would nevertheless defer jurisdiction to the Court of Federal Claims, the forum singularly experienced in resolving government contract disputes.

Except as provided by subsection (b) of this section, ... no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of Chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.

39 U.S.C. § 410(a). Federal question jurisdiction, *see* 28 U.S.C. § 1331, also fails because the plaintiff cannot establish that an Act of Congress is an essential element of the claim.[1] Similarly, plaintiff's assertion of jurisdiction pursuant to 28 U.S.C. § 1339 [2] fails because the dispute does not arise under an Act of Congress but instead stems from a contract dispute.

This leaves section 409(a) of the PRA as the only possible ground of the Court's jurisdiction. Section 409(a) states:

Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service.

39 U.S.C. § 409(a).

### B. The Contract Disputes Act of 1978

■ The crux of the USPS' argument to dismiss Four Star's complaint is that the Contract Disputes Act of 1978 ["CDA"], 41 U.S.C. §§ 601–13, effective March 1, 1979, preempts the jurisdiction granted by section 409(a) of the PRA and eliminates this Court's sole remaining basis of subject matter jurisdiction. The CDA applies to "any express or implied contract ... entered into by an executive agency for—... the procurement of services," *id.* § 602(a)(2), and defines the USPS as an executive agency, *id.* § 601(2). The CDA established a system for those wishing to appeal contract decisions made by government agencies. The aggrieved contractor

2. Section 1339 provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service."

must first file a claim in writing to the contracting officer for a decision. *Id.* § 605(a). Once that decision is rendered, the contractor may appeal that decision to either the agency's board of contract appeals, *id.* §§ 606–07, or to the United States Court of Federal Claims ["Court of Federal Claims"], *id.* § 609(a) ("[I]n lieu of appealing the decision of the contracting officer ... to an agency board, a contractor may bring an action directly on the claim in the [Court of Federal Claims], notwithstanding any contract provision, regulation, or rule of law to the contrary.").

## C. Choice of Law and Forum Selection Clauses in the USPS Solicitation Mandate Application of the CDA

■ Before the Court reaches the question of whether the CDA preempts the jurisdiction granted by the PRA, Four Star must overcome the hurdle created by the choice of law and forum selection clauses in the USPS solicitation papers. The solicitation stated that

a. This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. §§ 601–613) ("the Act").

b. Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

.   .   .   .   .

e. The Contracting Officer's decision is final unless the supplier appeals or files a suit as provided in the Act.

(Solicitation at H.5 "Claims and Disputes," attached as Ex. A to Mot. to Dismiss.)

The District Court of the Eastern District of Pennsylvania addressed this precise issue in a matter involving a disputed contract containing identical language. In *Spodek v. United States*, 26 F.Supp.2d 750, 756 (E.D.Pa.1998), the court held that

even if this Court were to find that the CDA did not vest exclusive jurisdiction in the Agency Board of Contract Appeals or the United States Court of

Federal Claims as a matter of statutory construction, Lease II [the disputed contract] would still be subject to the provisions of the CDA under a forum selection clause contained in Lease II. Specifically, the contract clause provides:

This contract is subject to the Contract Disputes Act of 1978 ("the Act"). Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

This forum selection provision selects the resolution fora provided for under the CDA, i.e., the Agency Board of Contract Appeals or the United States Court of Federal Claims, as the exclusive fora in which to bring this action.

Quoting an earlier unpublished decision of the same court, the court in *Spodek* further clarified why the inclusion of these provisions in the contract mandates this conclusion:

"[T]he lease between [plaintiffs] and the USPS specifically provides that all claims and disputes must be resolved under the CDA. The lease does not mention the PRA. By providing that the CDA would apply to all disputes, the USPS contends that all claims must be adjudicated, if in a court, in the Court of Federal Claims. Otherwise, the language in the lease referring to the CDA would be mere surplusage. There can be no reason to refer to the CDA except to specify the forum for the resolution of disputes."

*Id.* (quoting *Deshields v. Chuong*, No. 96–3402, 1996 WL 397473, at *1 (E.D.Pa. July 5, 1996)).

The inclusion of the forum selection clause in the USPS' solicitation and Four Star's acceptance of the clause renders moot the question of whether the CDA eliminates the jurisdictional authority created by section 409(a) of the PRA. The parties agreed that the CDA would govern any dispute arising out of the contract and

the CDA only provides two avenues of relief: an appeal from the contracting officer's decision to either the agency's board of contract appeals or to the Court of Federal Claims.

### D. The CDA Preempts the Jurisdiction Granted to the District Courts by Section 409(a) of the PRA

■ Given the importance of the issue and the dearth of relevant case law in this jurisdiction, the Court will address, as an alternative ground for dismissal, whether the CDA preempts the jurisdiction otherwise granted by section 409(a) of the PRA.

The United States Court of Appeals for the Third Circuit, contrary to the assertions of plaintiff,[3] has not ruled on this issue in the context of an aggrieved contractor attempting to seek relief after the contract was awarded. Numerous other circuits, however, have held that the CDA preempts the jurisdiction granted in section 409(a). A particularly instructive overview of the analysis leading to this conclusion is found in *Consumers Solar Electric Power Corp. v. United States Postal Service*, 530 F.Supp. 702 (C.D.Cal.

1982) ["Consumers Solar"]. *Consumers Solar* offers several persuasive reasons to support a finding that the CDA does preempt the jurisdictional grant of section 409(a), namely, (1) the legislative history of the CDA clearly indicates that Congress intended for only one forum, the Court of Federal Claims, to deal with this complex area of the law, (2) the Court of Claims is uniquely qualified to deal with issues arising out of government contracts; (3) a precisely drawn, detailed statute such as the CDA preempts more general remedies such as those embodied in the PRA; and (4) where the government has waived its sovereign immunity and consented to sue and be sued, Congress may impose conditions, such as limiting the available fora for claims, on that waiver as it sees fit. *Id.* at 705–07.

In the absence of any relevant case law in this jurisdiction, the Court finds the reasoning and conclusion of the court in *Consumers Solar* to be persuasive and adopts it accordingly. The CDA preempts the jurisdictional grant set forth in section 409 of the PRA.[4] Accordingly, disputes arising out of government contracts sub-

---

**3.** The plaintiff relies heavily on *Licata v. United States Postal Serv.*, 33 F.3d 259 (3d Cir. 1994). *Licata*, however, holds that the Tucker Act, 28 U.S.C. § 1491(a)(1), does not apply to the USPS, an issue irrelevant to Four Star's arguments. 33 F.3d at 263. The Court of Appeals specifically declined to reach the question of whether the CDA preempts the district court's jurisdiction under the PRA. *Id.* at 264 n. 6. The plaintiff also cites to a series of cases collectively referred to as the "*Scanwell*" doctrine, namely, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir. 1970), *Coco Brothers, Inc. v. Pierce*, 741 F.2d 675 (3d Cir.1984), *Sea–Land Service, Inc. v. Brown*, 600 F.2d 429 (3d Cir.1979), and others. The *Scanwell* doctrine provides that claims of a disappointed bidder remain within the jurisdiction of the district courts even after the adoption of the CDA. The *Scanwell* doctrine also is inapplicable to Four Star's position. By definition, a disappointed bidder is a party who was unsuccessful and was not awarded the contract. Four Star is not a disappointed bidder; its bid was successful and the USPS awarded Four Star a contract. Four Star cannot utilize the potential reme-

dies offered by the *Scanwell* doctrine. Finally, the plaintiff relies on the findings of *Pike v. United States Postal Service*, 886 F.Supp. 487 (E.D.Pa.1995). Although the court in *Pike* did conclude that the CDA preempts the PRA, this Court finds the *Pike* analysis and reasoning unpersuasive. Furthermore, the subsequent opinion of *Spodek v. United States*, 26 F.Supp.2d 750, 756 (E.D.Pa.1998), rejects the earlier holding of *Pike*.

**4.** As noted by the plaintiff, in a previous matter involving the same parties, the Court reached a different conclusion. *See Four Star Aviation, Inc. v. United States Postal Serv.*, Civ. No.1994–055 (D.V.I.1994). Although the Court did not issue a written decision before the parties stipulated to dismissal of the action, the minutes of a September 9, 1994, hearing indicate that the Court found it had jurisdiction over the matter. The record does not indicate the basis for the Court's findings. Accordingly, the Court's decision herein that the CDA preempts the jurisdictional grant found in the PRA overrules any previous findings to the contrary.

ject to the CDA are properly heard before the agency's board of contract appeals or the Court of Federal Claims.[5]

## IV. CONCLUSION

The contract entered into by Four Star and the USPS provides that the CDA would govern any dispute arising out of that contract. As the CDA provides only two available forums for review, the USPS's board of contract appeals or the Court of Federal Claims, this Court is not the appropriate forum for Four Star's claims. Alternatively, the Court finds that the CDA preempts the jurisdictional grant of section 409(a) of the PRA, eliminating this Court's sole basis for subject matter jurisdiction over this dispute. Accordingly, in lieu of dismissal and in the interest of justice, the Court will transfer this case to the Court of Federal Claims.

## ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that this matter is **TRANSFERRED** to the United States Court of Federal Claims.

---

**5.** The Court rejects the argument that, because the plaintiff does not allege a breach of contract but instead seeks injunctive and declaratory relief, and specific performance, the Court retains an independent basis of subject matter jurisdiction apart from the CDA. Four Star cannot avoid the jurisdictional bar of the CDA by alleging causes of action other than breach of contract when this dispute so obviously arises out of the contract, or by simply not requesting damages. *See, e.g., Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 77 (D.C.Cir.1985). "Effective enforcement of the jurisdictional limits of the CDA mandates that [this Court] recognize contract actions that are dressed in tort clothing." *United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir.1995).