**EAGLE FENCE CO., INC. Plaintiff,**

v.

**V.S. ELECTRIC, INC. and United States Postal Service, Defendants.**

No. 03–CV–5736.

United States District Court, E.D. Pennsylvania.

June 25, 2004.

Joel M. Flink, Ginsberg LLC, Philadelphia, PA, for Plaintiff.

Elizabeth M. McKenna, Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd., Patricia D. Gugin, Virginia A. Gibson, U.S Attorney's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff Eagle Fence Co., Inc. ("Eagle Fence") brings this breach of contract action against defendants United States Postal Service ("USPS") and V.S. Electric, Inc. ("V.S.") alleging that Eagle Fence was

not paid for work performed at a USPS office. Eagle Fence's complaint asserts the following three causes of action: (1) breach of contract; (2) violation of the Contractor and Subcontractor Payment Act, 73 P.S. § 502 et seq., and (3) unjust enrichment. Presently before this court is the USPS's motion to dismiss Eagle Fence's complaint. For the reasons that follow, the USPS's motion is granted.

## I. Factual Background [1]

Eagle Fence and V.S. are both Pennsylvania corporations with principle places of business in Philadelphia, Pennsylvania. (Compl.¶¶ 1,2.) The USPS is a government agency. (Id. ¶ 3.) Eagle Fence is in the business of constructing, maintaining, and repairing fences. On or about June 7, 2000, Eagle Fence entered into a contract with V.S. to provide "materials and fence installation services to V.S. as a subcontractor for a project at the USPS office [in] ... Bellmawr, NJ." (Id. ¶ 4.) According to Eagle Fence, after the work was completed, USPS vehicles damaged the fence which had been installed by Eagle Fence. (Id. ¶ 6.) As a result, V.S. and the USPS requested that Eagle Fence perform the necessary repairs, as well as some additional improvements. (Id. ¶ 7.) Furthermore, Eagle Fence avers that the USPS represented that it would pay for the repairs, which Eagle Fence promptly completed. (Id. ¶ 8.) Despite having performed the repairs to the satisfaction of both V.S. and the USPS, Eagle Fence alleges that payment was never received.[2] (Id. ¶¶ 10–13.)

## II. Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the court must first determine whether defendant's motion attacks the complaint as deficient on its face, or whether defendant's motion attacks the existence of subject matter jurisdiction in fact. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). Where defendant's 12(b)(1) motion facially attacks the complaint, the court must take all allegations in the complaint as true. Id. On the other hand, where defendant attacks the court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. (holding that because the core of a factual 12(b)(1) motion is the trial court's "very power to hear the case" the trial court can evaluate the merits of the jurisdictional claims for itself). Moreover, the plaintiff bears the burden of proof that subject matter does in fact exist. Id. Although the USPS failed to label its motion as either a factual or a facial attack, it is clear that the USPS chose the latter approach because it asserts that "no presumptive truthfulness attaches" to Eagle Fence's allegations. (Def.'s Mot. to Dismiss at 3.)

## III. Discussion

After having previously removed this action to the district court pursuant to 39

---

1. Although no presumptive truthfulness attaches to the allegations set forth in plaintiff's complaint when defendant challenges the court's subject matter jurisdiction in fact, defendant does not specifically dispute the facts set forth in this section. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977); see also supra Section II.

2. It is unclear from Eagle Fence's complaint whether Eagle Fence alleges that it was not paid for either the original fence installation or the added repairs and improvements, or whether Eagle Fence is alleging that it did not receive payment only for the added repairs and improvements.

U.S.C. § 409 and 28 U.S.C. §§ 1346, 1441, the United States Postal Service ("USPS") now seeks to dismiss plaintiff's complaint for lack of subject matter jurisdiction.[3] Specifically, the USPS asserts that plaintiff's claims are governed by the provisions of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, pursuant to which exclusive jurisdiction is vested with the United States Court of Federal Claims and the Agency Board of Contract Appeals. (Def.'s Mot. to Dismiss at 2.)[4] Plaintiff, on the other hand, asserts that the federal district court exercises concurrent jurisdiction with the Court of Federal Claims and the Agency Board of Contract Appeals over government-private contracts.

 In any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). To establish the jurisdiction of the district court, therefore, the plaintiff must first demonstrate that the government has waived its immunity to suit with respect to the claims asserted.

39 U.S.C. § 401(1) of the Postal Reorganization Act waives the Postal Service's sovereign immunity by providing that it may "sue and be sued in its official name." 39 U.S.C. § 401(1) (2004). Furthermore, Eagle Fence rests its jurisdictional claim on 39 U.S.C. § 409(a). Section 409(a) provides that district courts shall have original, but not exclusive jurisdiction over all actions brought by or against the postal service. 39 U.S.C. § 409(a). According to the Third Circuit, absent a statutory bar, § 409(a) provides district courts with an independent basis for subject matter jurisdiction—no other substantive legal framework is necessary to confer jurisdiction. *Licata v. United States Postal Serv.,* 33 F.3d 259, 262–63 (3d Cir.1994).

Provided that § 409(a) granted jurisdiction to the district court over cases in which the USPS was a party, the dispositive question before me is whether the subsequent enactment of the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, divested the district court of such jurisdiction in relation to certain kinds of claims. The CDA generally provides a system for adjudicating certain contract claims

**3.** As pointed out by Eagle Fence, the USPS is in what appears, at first glance, to be the contradictory position of having removed this action based upon an averment that this court has subject matter jurisdiction pursuant to the Postal Reorganization Act, 39 U.S.C. § 409, and 28 U.S.C. §§ 1346, 1441, which it now disavows in its motion to dismiss. Eagle Fence refers to this as a "procedural ambush" representing a deliberate attempt to prejudice and delay the plaintiff. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 2.) There is, however, a split in authority regarding whether the district court can exercise jurisdiction over certain contract claims in which the USPS is a party pursuant to 39 U.S.C. § 409(a), or whether the Contract Disputes Act, 41 U.S.C. §§ 601–613, preempted such jurisdiction. The Third Circuit has expressly reserved deciding the issue. *See Licata v. United States Postal Serv.,* 33 F.3d 259, 264 n. 6 (3d Cir.1994); *see also* Section II *infra.*

Because 39 U.S.C. § 409(a) vested jurisdiction in the federal district courts to hear claims where the USPS was a party, and because the USPS could not predict the instant decision of this court, it cannot be said that the USPS's position is necessarily contradictory. If the CDA did not preempt whatever jurisdiction the federal district courts previously had under 39 U.S.C. § 409(a), then this court would have exercised jurisdiction over this case.

**4.** Alternatively, if this court finds that it can exercise concurrent jurisdiction under the CDA, the USPS asks that plaintiff's claims be dismissed for failure to exhaust the requisite administrative remedies under the CDA. Because I find that this court does not have subject matter jurisdiction over plaintiff's claims, I do not reach the issue of exhaustion.

against the government.[5] The CDA "applies to any express or implied contract . . . entered into by an executive agency for—(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or (4) the disposal of personal property." 41 U.S.C. § 602(a). The CDA provides detailed procedures for adjudicating government contract disputes. Specifically, under the CDA, "[a]ll claims by a contractor against the government relating to a contract [within the scope of the statute] . . . shall be submitted to the contracting officer for a decision." *Id.* § 605(a). Contractors may then appeal the decision of the contracting officer to the Court of Federal Claims, *id.* § 609, or an agency board of contract appeals, *id.* §§ 606, 607, Regardless, the subsequent appeal must be made to the Federal Circuit. *Id.* § 607(g)(1), 28 U.S.C. §§ 1295(a)(3) & (10). The parties do not dispute that the contract at issue in this action is a procurement contract. Furthermore, the CDA expressly states that the USPS is an executive agency covered under its terms. 41 U.S.C. § 601(2).

As correctly noted by Judge Eduardo Robreno in *Spodek v. United States,* 26 F.Supp.2d 750, 753 (E.D.Pa.1998), "[t]he courts are divided as to whether the CDA vests exclusive jurisdiction over certain contract claims against an executive agency, such as the USPS, in either the United States Court of Federal Claims or the Agency Board of Contract Appeals, rather than in the district court." *See Campanella v. Commerce Exchange Bank,* 137 F.3d 885, 890–91 (6th Cir.1998) (holding that the

detailed provisions of the CDA preempted more general jurisdictional provisions such that, even if the Small Business Administration's "sue and be sued" clause was an independent jurisdictional grant, the CDA, in effect, withdrew that grant); *A & S Council Oil Co., Inc. v. Lader,* 56 F.3d 234, 241–42 (D.C.Cir.1995) ("The Contract Disputes Act . . . appears to be the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions."); *United States of America v. J & E Salvage Co.,* 55 F.3d 985, 987 (4th Cir. 1995) ("The review procedures under the CDA are exclusive of jurisdiction in any other forum."); *Jackson v. United States Postal Serv.,* 799 F.2d 1018, 1022 (5th Cir. 1986) (noting that with the enactment of the Contract Disputes Act, the Claims Court [currently known as the Court of Federal Claims] received exclusive jurisdiction to hear any claim arising from a breach of a USPS procurement contract covered by the Act). *But see Wright v. United States Postal Serv.,* 29 F.3d 1426, 1430 (9th Cir.1994) (holding that the "sue and be sued" provision of the Postal Reorganization Act, 39 U.S.C. § 401(1), coupled with the provision of 39 U.S.C. § 409(a) granting the district courts original but not exclusive jurisdiction over actions by or against the USPS, provide an independent statutory grant of jurisdiction to the federal courts which is not preempted by the CDA); *Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370, 1377 (11th Cir.1991) (holding that while the Federal Tort Claims Act and the CDA both waive immunity, "there is no need to apply either if another method of bringing suit is avail-

---

**5.** The purpose of the CDA is to "help to induce resolution of more contract disputes by negotiation prior to litigation; equalize the bargaining power of the parties when a dispute exists; provide alternate forums suitable to handle different types of disputes; and

insure fair and equitable treatment to contractors and Government agencies." S.Rep. No. 95–1118 (1978), *reprinted in* 978 U.S.C.C.A.N. 5235, 5253, *quoted in Spodek v. United States,* 26 F.Supp.2d 750, 753 n. 3 (E.D.Pa.1998).

able"); *Pike, L.P. v. United States Postal Serv.*, 886 F.Supp. 487 (E.D.Pa.1995).

After reviewing the applicable case law, and noting that the Third Circuit expressly reserved deciding the issue in *Licata v. United States Postal Serv.*, 33 F.3d 259, 264 n. 6 (3d Cir.1994), Judge Robreno held that "the CDA vests exclusive jurisdiction with either the Agency Board of Contract Appeals or the United States Court of Federal Claims over claims regarding procurement contracts entered into by an executive agency, such as the USPS." *Spodek*, 26 F.Supp.2d at 754. In so holding, Judge Robreno noted that he found the reasoning of the Fourth, Sixth, and District of Columbia to be persuasive. *See A & S Council Oil Co.*, 56 F.3d 234 (D.C.Cir. 1995); *Campanella*, 137 F.3d 885, 890–91 (6th Cir.1998); *J & E Salvage Co.*, 55 F.3d 985 (4th Cir.1995). In sum, Judge Robreno reasoned that:

> [g]ranting district courts concurrent jurisdiction over certain government contracts would interfere with the congressional goal of achieving judicial efficiency by limiting particular government procurement contracts to certain fora ... that have specialized knowledge.

*Spodek*, 26 F.Supp.2d at 755. Since *Spodek* was decided, subsequent courts have likewise held that the CDA preempts federal district court jurisdiction over certain contract claims against the government. *See Up State Federal Credit Union v. Walker*, 198 F.3d 372 (2d Cir.1999) (holding that, pursuant to the CDA, the Court of Federal Claims has exclusive jurisdiction over contract claims against the Army); *Fortna, Inc. v. United States Postal Service, Siemens Electrocom, L.P.*, CIV.A. No. 00–3081, 2000 WL 33119416, *1, 2000 U.S. Dist. LEXIS 19179, *3

(E.D.Pa. Dec. 29, 2000) ("The Court follows the great weight of authority and finds that the Contract Disputes Act ("CDA"), 41 U.S.C. 601–613, vests exclusive jurisdiction with either the Agency Board of Contract Appeals or the United States Court of Federal Claims over claims regarding procurement contracts entered into by an executive agency, such as the USPS.").

■ Upon consideration of the CDA, as well as the decisions reached by various courts which have addressed the issue, I concur with the reasoning set forth by Judge Robreno in *Spodek* and likewise conclude that the CDA vests exclusive jurisdiction over claims brought by contractors regarding procurement contracts entered into by the USPS with either the Agency Board of Contract Appeals or the United States Court of Federal Claims. Because Judge Robreno's reasoning is fully set forth in *Spodek*, further explication on my part would be superfluous.

■ Thus, to the extent that Eagle Fence entered into a contract with the USPS, this court has no jurisdiction over this case. To the extent that Eagle Fence is a subcontractor,[6] as opposed to a contractor, the analysis must go one step further. Because the CDA expressly applies only to claims by contractors, I must decide whether the CDA nevertheless preempts the entire field of government contract remedies such that a subcontractor is also prevented from obtaining jurisdiction in federal court in an action against the USPS. *See* 41 U.S.C. § 605(a) (specifically referring to "[a]ll claims by a contractor against the government"); *see also Tradesmen Int'l, Inc. v. United States Postal Serv. & Lockheed Martin Corp.*, 234 F.Supp.2d 1191 (citing S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted*

---

**6.** This is an open question of fact.

*in* 1978 U.S.C.C.A.N. 5235, 5250–51 ("The recommendations of the procurement commission specifically exclude bringing subcontractors under the provisions of s. 3178 [the bill providing for the resolution of claims and disputes relating to government contracts].")) If the CDA likewise preempts federal court jurisdiction over actions by subcontractors, then subcontractors are entitled neither to relief through the statutory system set up by the CDA, nor to actions against government agencies in district court.

In *Fortna,* the court held that the CDA's preemption of district court jurisdiction extends to actions brought against the USPS by subcontractors. *Fortna,* 2000 WL 33119416 *1 (citing *Carroll v. United States Postal Serv.,* 764 F.Supp. 143, 145 (E.D.Mo.1991), *Biebel Bros. v. United States Postal Serv.,* 772 F.Supp. 1117, 1118 (E.D.Mo.1991), *Eastern, Inc. v. Shelly's of Delaware, Inc., et al.,* 721 F.Supp. 649 (D.N.J.1989)). Although the court in *Fortna* did not expand upon this holding, one of the opinions cited in *Fortna,* namely *Eastern,* did. Reasoning that allowing subcontractors to sue in district court would contravene the purposes of the CDA, the court in *Eastern* explained:

> It is indeed true . . . that the provisions of the CDA do not apply to subcontractors . . . At the same time, however, Congress could not have expected subcontractors to have access to district courts after it closed the doors of district courts to contractors. The twin aims of the CDA reflect Congress's desire to eliminate the unnecessary costs arising from government contracts. Permitting subcontractors to bring actions against the USPS in district court, however,

would increase these costs in several ways. First, an executive agency that has entered into a contract with a general contractor would potentially be subject to suit by dozens of subcontractors in District Court, which, as the CDA indicates, Congress views as an inefficient forum for resolution of contract-based problems. Second, allowing subcontractors to proceed in District Court would frustrate the formation of government contracts. The spectre of dozens of subcontractors bringing actions against a governmental agency in district court may very well chill the agency's enthusiasm to enter into contracts.

*Eastern,* 721 F.Supp. at 651.[7]

Considering the availability of other avenues of relief and the purpose of the CDA, including the unlikelihood that Congress intended to create a comprehensive system for streamlining the resolution of claims by contractors while at the same time allowing subcontractors to continue to bring claims in federal district court, I likewise conclude that Congress also intended the CDA to preclude district courts from asserting jurisdiction over claims brought by subcontractors. Eagle Fence's complaint against the USPS, therefore, is dismissed. An appropriate order will follow.

---

7. The court in *Eastern* went on to discuss the avenues through which subcontractors can pursue remedies. *Eastern,* 721 F.Supp. at 652. These avenues include actions against executive agencies via the sponsorship practice and under the Miller Act, 40 U.S.C. §§ 270a–270d (current version at 40 U.S.C. §§ 3131–3133). *Id.*